**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**BLAKE ARNOLD LINDSEY**                                                **PLAINTIFF**

**v.**                                           **CIVIL ACTION NO. 3:09CV057-SAA**

**COMMISSIONER OF SOCIAL**
**SECURITY**                                                          **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiff Blake Arnold Lindsey is seeking judicial review of denial of his application under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's denial supplemental security income ("SSI") benefits based on disability under Title XVI of the Social Security Act. The district court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), both parties have consented to have a magistrate judge conduct all the proceedings in this case; the undersigned therefore has the authority to issue this opinion and the accompanying final judgment.

**FACTS**

The plaintiff protectively filed his applications for benefits on April 12, 2006. Both applications claim a disability beginning June 1, 2005.[1] At the time of the hearing decision, on

---

[1] Plaintiff also applied for children's supplemental security income. The ALJ made little mention of plaintiff's application for child benefits. *See* Tr. 9. As of the date of plaintiff's application for benefits, April 12, 2006, he had already passed his eighteenth birthday. Tr. 91. Under 20 C.F.R. § 416.906 (2009) a "child" for disability purposes is defined as an individual under the age of 18. Because eligibility for SSI begins as of the application date, Plaintiff did

1

November 21, 2008, he was 21 years of age.  Plaintiff claims he is disabled due to psychological impairments, including bi-polar disorder, depression and anxiety disorder with agoraphobia.  In his decision the ALJ found that plaintiff has anxiety disorder with agoraphobia, a severe impairment.  Tr. 12, Finding No. 3.  Nevertheless, the ALJ determined that this impairment, either alone or in combination with other impairments, does not meet or equal one of the Listings found in 20 C.F.R. Part 404, Subpart P, Appendix 1.   Tr. 12, Finding No. 4.

Upon consideration of the record as a whole, the ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but that he is unable to work with the general public and may perform jobs that require no more than minimal interaction with co-workers and supervisors.  Tr. 13, Finding No. 5. Considering the plaintiff's age, education, lack of past relevant work experience and RFC, using the Medical-Vocational Guidelines as a framework and relying on the testimony of a vocational expert ("VE"), the ALJ determined there was other work in the national economy that the plaintiff could perform, and he was  not disabled as defined by the Social Security Act.  Tr. 16 - 17, Finding Nos. 10 & 11.  Plaintiff unsuccessfully sought review from the Appeals Council and timely filed suit in this court.

The plaintiff contends on appeal that he ALJ improperly analyzed the medical records including opinion evidence, selectively read the evidence in the record, failed to fully develop the record, failed to mention all of plaintiff's impairments in his hypothetical to the vocational expert, erred in refusing to find the plaintiff's mental impairment met or was equal to a Listing, and erred in formulating the plaintiff's RFC.  The plaintiff's shotgun approach on appeal

---

not meet the age requirement for child's SSI. *See* 20 C.F.R. §§ 416.305; 416.335 (2009).

effectively raises only two issues that warrant review – whether the ALJ's decision is supported by substantial evidence and whether the ALJ's hypothetical to the VE was proper. The court will address these arguments accordingly.

## **STANDARD OF REVIEW**

In all Social Security cases, at all stages of the proceedings the burden rests upon the plaintiff to prove disability. *See Kraemer v. Sullivan*, 885 F.2d 206, 204 (5th Cir. 1989); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987). In determining disability, the Commissioner, through the ALJ, works through the five-step sequential evaluation process established by the Social Security Administration.[2] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining his burden at each of the first four levels then the burden shifts to the Commissioner at step five.[3] The steps are:

> 1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.
> 2. An individual who does not have a "severe impairment" will not be found to be disabled.
> 3. An individual who meets or equals a listed impairment in Appendix 1 of the regulations will be considered disabled without consideration of vocational factors.
> 4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.
> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.

*Dominguez v. Astrue,* 286 Fed.Appx. 182, 187-188, 2008 WL 2787483, 4 (5th Cir. 2008). In

---

[2]*See* 20 C.F.R. §§ 404.1520 (1996) & 416.920 (1996).

[3]*Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).

3

analyzing step five, considering plaintiff's RFC, age, education and past work experience, if any, the ALJ determines whether he is capable of performing other work.[4] If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff is given the chance to prove that he cannot, in fact, perform that work.[5] Under applicable Social Security rules and regulations, the Commissioner has the final responsibility for determining an individual's residual functional capacity ("RFC"), whether that RFC prevents his from doing past relevant work, if any, and ultimately for determining whether an individual is disabled under the Social Security Act. *See* 20 C.F.R. § 404.1527.

### III.  DISCUSSION

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standard. *Muse v. Sullivan,* 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the ALJ applied the proper

---

[4]20 C.F.R §§ 404.1520(f)(1) (1996) & 416.920(f)(1) (1996).

[5]*Muse*, 925 F.2d at 789.

4

legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[6] even if it finds that the evidence leans against the Commissioner's decision.[7] Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). If the Commissioner's decision is supported by the evidence, it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994). The court's inquiry is whether the record as a whole provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401(1971).

Substantial Evidence

In this case the ALJ found that the plaintiff suffered from an anxiety disorder with agoraphobia that was "severe" under the Act, but found that the plaintiff's allegations regarding the extent of his limitations was not fully credible. After careful review of the record as a whole, the ALJ found that the plaintiff has the RFC to perform a full range of work at all exertional levels but is limited by several non-exertional limitations noted above. In making this finding, the ALJ detailed his consideration of the medical evidence, as well as the records from plaintiff's school relating to his ability and IQ. However the main evidence cited by the ALJ in support of his decision is a work report provided by plaintiff's former employer at a golf course. Tr. 140 -

---

[6] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[7] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

142. The employer reported that plaintiff maintained punctuality and attendance, remembered work instructions, maintained attention, satisfactorily interacted with co-workers, supervisors and the public. Tr. 141. The employer stated that plaintiff "can do anything he wants to do." Tr. 142 (emphasis original).

Plaintiff's school records from Coffeeville School District show that he repeated kindergarten and was in special education classes for speech and reading at age 7 in the first grade. Tr. 225, 228. The results from the Wechsler Intelligence Scale for Children - III ("WISC-III") in administered to plaintiff in 1995 show that plaintiff had a Verbal IQ score of 93, a Performance IQ score of 82 and a Full Scale IQ of 87.[8] Tr. 230. Plaintiff's teacher described him as a sweet child who is "not disobedient – but he does not pay attention." Tr. 236. In contrast to plaintiff's Full Scale IQ score of 87 in 1995, in 2006 plaintiff scored a Verbal IQ of 67, a Performance IQ of 70 and a Full Scale IQ of 66 when administered the Wechslar Adult Intelligence Scale – III edition by the consultative examining clinical psychologist, Dr. Charles Small. Tr. 240, 241. The ALJ discussed the disparity in the two scores with plaintiff and his attorney at the administrative hearing and was unable to determine a legitimate, non-speculative reason for the difference; the ALJ took the matter under advisement. Tr. 45-47.

The court has carefully reviewed the entire record in this case, and there is clearly a discrepancy between the 1995 IQ scores and the 2006 test scores. In his decision, the ALJ

---

[8]The plaintiff's argument that this Full Scale IQ score of 87 was a typographical error and should have been a 67, consistent with the score obtained by plaintiff when tested by Dr. Charles Small in 2006 is creative, but lacks merit in light of the plaintiff's Verbal Score of 93 and Performance Score of 82. The combination of the Performance and Verbal scores of the 1995 School District test would result in a Full Scale IQ score of 67. Indeed, the report states that the "results indicate that overall the student is performing in the low average range of intelligence." Tr. 230-31.

6

found that the plaintiff was not entirely credible, noting numerous inconsistencies between testimony by plaintiff and that of his wife regarding his abilities and activities of daily living. Tr. 14. Additionally, plaintiff's testimony was inconsistent with his former employer's report and even third-party reports relating to his abilities. Tr. 13 - 15. Other than their significant drop from 11 years earlier, the ALJ found no cause to question the validity of the IQ scores. There is no evidence that the plaintiff malingered on the 2006 test.

Intelligence test results obtained at age 16 or older may be assumed to apply to the plaintiff's current status provided they are compatible with the individual's current behavior. SSR 82-54, TITLES II AND XVI: MENTAL DEFICIENCY-INTELLIGENCE TESTING , p. 785. However, when test results obtained in the past are incompatible with current behavior, current testing will be required. *Id.* In this case, Dr. Small's report indicates that plaintiff's mental status has changed for the worse since he was evaluated in 1995. The record shows that he has become withdrawn, has anxiety attacks, and often likes to be alone, yet he is able to care for himself, help care for his young child, and while employed for a golf course as a commercial cleaner, performed well.

The plaintiff asserts that the ALJ erred as a matter of law by selectively reading the evidence. Nevertheless, it is established that the criteria for the listings are demanding and stringent, *Falco v. Shalala,* 27 F.3d 160 (5th Cir. 1994), and it is the plaintiff's burden to prove that his condition satisfies the listing. In this case, that plaintiff obtained a Full Scale IQ score of 67 in 2006 is not the sole determinative factor in plaintiff's ability to perform work-related activities. *See Chapman v. Astrue,* 135 Soc. Sec. Rep. Resv. 330 (N.D.Miss.2008). Where an ALJ merely states a summary conclusion that the plaintiff's impairments did not meet or equal

7

any Listed Impairment, without identifying the relevant listed impairments, discussing the evidence, or explaining his reasoning, the decision is not supported by substantial evidence. *Burnett v. Commissioner of Social Sec,* 220 F.3d 112, 119-120 (3rd Cir. 2000); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As the *Clifton* court stated*,* "[s]uch a bare conclusion is beyond meaningful judicial review." *Clifton* at 1009. This is absolutely not the case here.

An ALJ is not required to accept IQ scores that are inconsistent with the record. *Chapman v. Astrue,* 135 Soc. Sec. Rep. Resv. 330 (N.D.Miss.,2008); *see also Clark v. Apfel*, 141 F.3d 1253, 1255 (8th Cir. 1998). In this case, the ALJ found the plaintiff not disabled after considering the IQ tests in conjunction with the additional available evidence. Such an analysis is proper where there exist inconsistencies between intellectual tests and functioning and a plaintiff's ability to function in a work setting. *See Popp v. Heckler*, 779 F.3d 1479, 1499 (11th Cir. 1986). The ALJ found that despite the IQ score, the plaintiff was able to work but could not perform any work-related activities that involve the general public and may work in jobs that require no more than minimal contact with co-workers and supervisors. The issue before the court is whether the ALJ had sufficient evidence before him to discount the IQ test scores. The court finds he did.

The ALJ noted that the later IQ scores were consistent with mild mental retardation. He then looked to the opinion of Dr. Angela Herzog, Ph.D., a non-examining psychologist who reviewed plaintiff's medical records. Tr. 14-15, 248-258. Although Dr. Herzog indicated plaintiff has "marked" limitations in remembering and carrying out detailed tasks and dealing with the general public, she nevertheless found that he was able to perform simple work tasks

and could interact with co-workers and supervisors, with only "moderate" limitations in those areas. Tr. 257. These findings provide substantial evidence in support of the ALJ's RFC.

Listing 12.00 of 20 C.F.R. Pt. 404, Subpt. P, App. 1 addresses evaluation of mental disorders. Plaintiff, again taking the shotgun approach, claims he meets at least one of the following listings: 12.02 (organic mental disorders), 12.04 (affective disorders), 12.05 (mental retardation) or 12.06 (anxiety related disorders). Docket 7, p.9. The court holds that the plaintiff has failed to produce evidence that he meets or equals Listing 12.02 or 12.04[9].

To qualify for a disability finding under Listing 12.05(C), a claimant must meet both the diagnostic requirements contained in the introductory paragraph ("significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22) and the severity criteria contained in paragraph C (an IQ of 60 to 70 and a physical or other mental impairment). *See Randall v. Astrue*, 570 F.3d 651, 655-60 (5th Cir.2009); *Caradine v. Astrue*, 2009 WL 3769771 (N.D. Miss. 2009). Plaintiff suggests he meets the requirements of the listing by pointing to the IQ test score from Dr. Small's 2006 examination as well as his testimony regarding his daily living activities and a medical assessment from Communicare[10] dated November 17, 2008 and attached as Exhibit A to his brief[11]. To meet the

---

[9]The plaintiff all but concedes the same in his brief at page 10. There is simply no clinical evidence, other than possibility, to support the suggestions that these disorders may be "in play," to quote plaintiff's counsel. *See* Plaintiff's Brief at p. 9.

[10]It is unclear whether the form is from Parkwood or Cummunicare. The plaintiff received treatment at both facilities.

[11]The form was obtained nine months after the ALJ's decision. The signature on the form is wholly illegible. It is impossible to determine if the individual completing the form is a reliable medical source under applicable regulations. The court has previously advised this attorney that it may not and will not take into account any information that was not part of the record on appeal.

introductory paragraph's diagnostic criteria, the claimant must demonstrate that he has: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive behavior; and (3) manifested deficits in adaptive behavior before age 22. *See Crayton v. Callahan*, 120 F .3d 1217, 1219 (11th Cir.1997), cited with approval in *Randall*, 570 F.3d at 661.

In this case there is a clear discrepancy between plaintiff's IQ scores. The court has held that the ALJ was within his discretion not to accept the IQ scores from Dr. Small. There is no other competent medical evidence to establish that plaintiff meets the requisite IQ level of Listing 12.05. Accordingly, his argument that he meets the Listing must fail.

The ALJ evaluated plaintiff's mental impairments under Listing 12.00, more specifically under Listing 12.06 which requires the plaintiff meet at least one of the following:

> (1) Generalized persistent anxiety accompanied by three out of four of the following signs or symptoms:
>> a. Motor tension; or
>> b. Autonomic hyperactivity; or
>> c. Apprehensive expectation; or
>> d. Vigilance and scanning";
> or
> (2) A persistent irrational fear of a specific object, activity, or situation which results in a compelling desire to avoid the dreaded object, activity, or situation;
> (3) Recurrent severe panic attacks manifested by a sudden unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week;
> (4) Recurrent obsessions or compulsions which are a source of marked distress; or
> (5) Recurrent and intrusive recollections of a traumatic experience, which are a source of marked distress.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(A). Listing 12.06(B) requires the claimant to meet at least two of the following:

> (1) Marked restriction of activities of daily living;
> (2) Marked difficulties in maintaining social functioning;
> (3) Marked difficulties in maintaining concentration, persistence, or pace; or

(4) Repeated episodes of decompensation, each of extended duration.

Alternatively, a claimant may meet Listing 12.06(C) by showing that he is completely unable "to function independently outside the area of [his] home." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.06(B)-(C). Given the findings from Dr. Hertzog, the work-related report from plaintiff's former employer and testimony regarding his activities of daily living from his wife, it is clear that plaintiff does not meet or equal Listing 12.06. The ALJ's determination was supported by substantial evidence.

### Hypotheticals to the VE

Plaintiff argues that the ALJ failed to provide evidence of all of plaintiff's impairments to the VE. Two factors are of significance relating to this argument: (1) Although the plaintiff mentioned the issue briefly in his introductory statement, Docket 7, pp.10, 13., he failed to raise it in the substantive legal discussion portion of his brief,; and (2) The plaintiff admits that he has no physical impairments – only mental, non-exertional impairments.

The plaintiff is correct that the ALJ did not include bipolar disorder, organic mental impairment, low self-esteem or stuttering in his hypothetical as impairments to be considered by the VE. Likewise, the evidence in the record shows that these issues did not significantly impact the plaintiff's ability to work. As stated by the ALJ in his decision, "[plaintiff] may be limited in working with others, but the weight of the evidence does not support a conclusion that he cannot work outside the home." Tr. 15. This statement encapsulates the entirety of this case. The evidence shows that the plaintiff clearly suffers from mental impairments, he admittedly has no physical impairments, and the evidence from his family, school and a former employer confirms that despite his non-exertional limitations he is able to work, was punctual, could maintain

attention and concentration, complete tasks without problems, and was able to interact on at least a limited basis with co-workers and supervisors and the public. The evidence shows that plaintiff is capable of maintaining substantial gainful employment despite his limitations. This evidence comes from a variety of sources – plaintiff's family, former employer, school teachers and physicians. The ALJ clearly detailed his consideration of all of the evidence in the record and explained his findings. Because the ALJ provided explicit reasons for his decision, this court is persuaded that the ALJ's decision is supported by substantial evidence in the record.

The court's function in reviewing a decision of the of the Commissioner is limited to determining whether the record, considered as whole, contains substantial evidence that supports final decision of the Commissioner as a trier of fact. This court may not reweigh evidence or retry issues de novo or substitute its judgment for that of the Commissioner. The court's inquiry is whether the record as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401(1971) It is well established that an ALJ may, for good cause and with sufficient discussion in his decision, disregard evidence from a treating physician, make determinations regarding the validity of test scores and determine the credibility of the plaintiff or other witnesses' testimony. *See Qualls v. Astrue* 2009 WL 2391402, 5 (5th Cir. 2009); *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1983). *See also* Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims-Assessing the Credibility of an Individual's Statements, SSR 96-7p.

In this case, the ALJ specifically considered all of the evidence: the plaintiff's bipolar disorder, his panic attacks, his stuttering, the discrepancy in his IQ scores, the former employer's report, the testimony of plaintiff and his wife, inconsistencies in the evidence, including

plaintiff's activities of daily living, the medical evidence and more. The ALJ's 17-page decision is replete with detailed citations to the record, consideration of all the evidence and the ALJ's conclusions based on that consideration. The undersigned cannot find that the ALJ's decision, while not mechanically within the letter of each and every regulation, was in error. The court holds that the decision is specific, well reasoned and consistent with the facts and the record as a whole and must be affirmed. *See Johnson v. Bowen*, 864 F.2d 340, 347-48 (5th Cir. 1988). A separate Final Judgment will issue this day.

This, the 22rd day of June, 2010.

      /s/ S. Allan Alexander
    UNITED STATES MAGISTRATE JUDGE